**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| DIANA MANCILLAS-GUTIERREZ, ) | No. CV 08-1169 AGR |
|            Plaintiff, ) | |
| ) | MEMORANDUM OPINION AND ORDER |
|     v.           ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
|           Defendant. ) | |

Plaintiff Diana Mancillas-Gutierrez ("Mancillas-Gutierrez") filed a Complaint on February 26, 2008.  Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on July 8 and 14, 2008.  (Dkt. Nos. 8, 10.) The parties filed a Joint Stipulation ("JS") on November 3, 2008, that addresses the disputed issues in the case.  The Commissioner filed the certified administrative record. The Court has taken the Joint Stipulation under submission without oral argument.

Having reviewed the entire file, the Court concludes that the decision of the Commissioner is affirmed.

///

///

I.

## PROCEDURAL BACKGROUND

On November 3, 2005, Mancillas-Gutierrez filed an application for disability insurance benefits.  AR 11.  The application was denied initially.  AR 20.  Mancillas-Gutierrez requested a hearing.  AR 26.  On May 5, 2006, Mancillas-Gutierrez filed an application for supplemental security income, which was escalated to the hearing level. AR 11.  The Administrative Law Judge ("ALJ") conducted a hearing on January 8, 2007. AR 215-253.  On July 30, 2007, the ALJ issued a decision denying benefits.  AR 8-19. Mancillas-Gutierrez filed a Request for Review of the ALJ decision.  AR 211-214.  On January 15, 2008, the Appeals Council denied the request for review.  AR 4-7.  This lawsuit followed.

II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  *Moncada*, 60 F.3d at 523.

///

///

2

III.

**EVALUATION OF DISABILITY**

**A.   Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

**B.   ALJ's Findings**

The ALJ found that Mancillas-Gutierrez has a severe combination of impairments: "minimal spondylosis of the thoracic spine at T9-T12; spondylosis of the lumbar spine with advanced disc degeneration and L5-S1; and obesity." AR 15.  Mancillas-Gutierrez has the residual functional capacity "to lift twenty pounds occasionally and ten pounds frequently.  She can stand up to two hours and walk up to two hours in combination, cumulatively, in an eight-hour workday, and she can sit, for up to six hours cumulatively in an eight-hour workday.  From time to time, or at least occasionally, she may do climbing, balancing, kneeling, crawling, and stooping." AR 16.  Mancillas-Gutierrez is capable of performing her past relevant work as Order Taker and Office Manager.  AR 18.

**C.   Treating Physician**

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This

1    can be done by setting out a detailed and thorough summary of the facts and conflicting

2    clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d

3    at 632 (citations and internal quotations omitted).

4        When the ALJ declines to give a treating physician's opinion controlling weight,

5    the ALJ considers several factors including the following: (1) length of the treatment

6    relationship and frequency of examination;[1] (2) nature and extent of the treatment

7    relationship;[2] (3) the amount of relevant evidence supporting the opinion and the quality

8    of the explanation provided; (4) consistency with record as a whole; and (5) the

9    specialty of the physician providing the opinion. *Id.* at 631; 20 C.F.R. § 404.1527(d)(1)-

10   (6). A treating physician's opinion may be adopted even if it does not meet the test for

11   controlling weight. *Orn*, 495 F.3d at 631-32 (quoting SSR 96-2p).

12        ***Ms. Mabasa***

13        The ALJ rejected the opinion of Mancillas-Gutierrez's treating physician's

14   assistant, Ms. Mabasa, dated March 13, 2006. AR 182-183. Preliminarily, the ALJ

15   noted that there is no evidence that a physician reviewed or signed the letter.[3] AR 17.

16   However, even assuming it is an opinion of a treating physician, the ALJ rejected the

17   opinion for two primary reasons: (1) the opinion is not supported by objective evidence;

18   and (2) the opinion closely resembled Mancillas-Gutierrez's letter to the assistant

19   outlining her symptoms and functional limitations. AR 17.

20

21

22

23      [1]   "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(I).

24

25

26      [2]   "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

27

28      [3]   Although Dr. Varga appears as the second name at the end of the letter, it is not signed by him. AR 183.

An ALJ may reject a treating physician's opinion that is not supported by that physician's clinical treatment records. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The letter states that Mancillas-Gutierrez "was most recently seen on March 01, 2006." AR 182. The ALJ is correct that there are no treatment records for March 1, 2006, and that Mancillas-Gutierrez was last treated at Pasadena Rehabilitation Institute five months earlier, in September 2005. AR 17. The only document dated March 1, 2006 is Mancillas-Gutierrez's letter to Ms. Mabasa, which refers to "today's visit" and provides "a little bio that may help you with the report for Social Security and as well as for me when I represent myself on the appeal." AR 193. The ALJ's characterization of the opinion as one that "closely resembles" the claimant's allegations is reasonable. *Compare* AR 182-183 *with* AR 193. Ms. Mabasa's opinion does not contain her own observations of Mancillas-Gutierrez's functional limitations. The ALJ may discount a treating physician's opinion written at the claimant's request and based on the claimant's subjective characterization of her symptoms and limitations (which the ALJ has found not credible). *See Bray v. Commissioner of SSA*, Case No. 06-36072, 2009 U.S. App. LEXIS 2261, at *24 (9th Cir. Feb. 6, 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may discount treating physician's opinion that rehashes claimant's own statements).

The ALJ noted that Ms. Mabasa's opinion is not consistent with the other objective evidence. AR 17. Mancillas-Gutierrez was treated at the Pasadena Rehabilitation Institute from April 15, 2005 – the alleged onset date – through September 2005. AR 128-152. There is a State Agency opinion dated February 2, 2006. AR 174-181. At the hearing on January 8, 2007, the ALJ ordered an orthopedic examination. AR 252-253. The orthopedic examination was performed by Dr. Boeck, a board certified orthopedic surgeon, on March 21, 2007.[4] AR 199-209.

---

[4] The year 2006 on AR 199 is a typographical error. The examination was ordered by the ALJ on January 8, 2007 (AR 252-253), the opinion is followed by a radiology report of the spine on March 21, 2007 (AR 205), Dr. Boeck refers to an MRI of the spine on

The State Agency opinion relied on the 2005 medical records.  AR 175-176.  The opinion found that Mancillas-Gutierrez could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk with normal breaks for 2 hours in an 8-hour day, sit with normal breaks for 6 hours in an 8-hour day, and occasionally climb, balance, stoop, kneel, crouch or crawl.  *Id.*  The ALJ noted that the opinion contained reasons and references to medical records in support of its conclusions.[5]  AR 16, 175-176, 179.

As the ALJ noted, the March 21, 2007 orthopedic consultative examination showed "medical improvement in the claimant's condition."  AR 16.  Dr. Boeck noted that Mancillas-Gutierrez's walk was even and steady,[6] she stood with her head held straight and normal spinal alignment, she readily squatted fully and got up easily, and she readily sat and lay down on the examination table.  AR 200-202.  There was no weakness in any upper extremity or lower extremity.  AR 202-203.  Dr. Boeck noted no pain in the upper and mid portions of her back, and muscle strength was normal.  AR 200.  However, Dr. Boeck observed Mancillas-Gutierrez's "obvious voluntary guarding" during range of motion testing of the lower back and neck.  AR 203; *see* AR 200-201.  Dr. Boeck noted complaint of pain in the low back with light pressure downwards on the vertex and hypersensitivity to touch over the lumbar spine area.  AR 200.  The radiology report on March 21, 2007 showed spondylosis with advanced disc degeneration at L5-S1.  AR 205.  Dr. Boeck reviewed her prior MRI and discography in 2005.  AR 203.  He opined that Mancillas-Gutierrez could perform medium level exertional work with some postural limitations consistent with or less restrictive than the ALJ's RFC.  AR 204.  An

December 11, 2006 (AR 203; *see* AR 194-196), and Dr. Boeck filled out a Medical Source Statement of Ability to Do Work-Related Activities (Physical) dated March 21, 2007 (AR 206-209).

[5]   A nonexamining physician's opinion may constitute substantial evidence when it is supported by other evidence in the record and is consistent with it.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[6]   By contrast, Ms. Mabasa observed in August 2005 that Mancillas-Gutierrez's gait was "slow, steady, but stiff and is somewhat waddling."  AR 133.

1 examining physician's opinion based on independent clinical findings constitutes
2 substantial evidence.  *Orn*, 495 F.3d at 632.

3        Accordingly, the ALJ set forth specific and legitimate reasons, supported by
4 substantial evidence in the record, for rejecting Ms. Mabasa's opinion.  The ALJ
5 considered the relevant factors and set forth the facts, conflicting clinical evidence,
6 interpretation and findings consistent with governing legal standards.  *See Orn*, 495
7 F.3d at 631-32.

8        ***Dr. Calleros***

9        The ALJ rejected Dr. Calleros' opinion dated March 28, 2005 because "there are
10 no treatment records to support Dr. Calleros's opinion."  AR 17.  "The ALJ need not
11 accept the opinion of any physician, including a treating physician, if that opinion is
12 brief, conclusory and inadequately supported by clinical findings."  *Thomas v. Barnhart*,
13 278 F.3d 947, 957 (9th Cir. 2002).  Here, the ALJ is correct that there are no treating
14 records from Dr. Calleros.  The ALJ did not err.

15       **D.**    **Credibility**

16        "To determine whether a claimant's testimony regarding subjective pain or
17 symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v.*
18 *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

19        First, "the ALJ must determine whether the claimant has presented objective
20 medical evidence of an underlying impairment 'which could reasonably be expected to
21 produce the pain or other symptoms alleged.'"  *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d
22 341, 344 (9th Cir. 1991) (en banc)).  Here, the ALJ found that Mancillas-Gutierrez "has
23 medical impairments that would reasonably be expected to cause some limitations."
24 AR 18.

25        "Second, if the claimant meets this first test, and there is no evidence of
26 malingering, 'the ALJ can reject the claimant's testimony about the severity of her
27 symptoms only by offering specific, clear and convincing reasons for doing so.'"
28 *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination,

the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

Here, the ALJ made no finding of malingering. "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (citing Social Security Ruling 88-13,[7] internal quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in claimant's statements; (b) inconsistencies between claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ discounted Mancillas-Gutierrez's credibility for four reasons: (1) lack of objective medical evidence to substantiate her allegations; (2) Mancillas-Gutierrez's "voluntary guarding" during orthopedic examination; (3) Mancillas-Gutierrez's letter to Ms. Mabasa outlining her symptoms and functional limitations for use in writing an

_____

[7]   Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

opinion; and (4) her ability to take care of her toddler daughter and activities of daily living.  AR 18.

The ALJ may properly rely on the absence of objective medical evidence supporting the severity of a claimant's subjective allegations, although it would not be sufficient alone to discount her credibility.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

An ALJ may properly rely on failure to give maximum or consistent effort during evaluation in discounting a claimant's credibility.  *Thomas*, 278 F.3d at 959.  Although Mancillas-Gutierrez argues that the ALJ erred in drawing an inference that she impeded accurate orthopedic testing (JS 7), that is a permissible inference.  *Id.* (ALJ may discount credibility based on his/her interpretation of "self-limiting behaviors" during testing).  Moreover, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."  *Id.* at 959; *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999).

Mancillas-Gutierrez argues that the ALJ improperly relied on her attempt to obtain a favorable letter from Ms. Mabasa.  (JS 9.)  However, the ALJ did not rely on the mere request for a disability letter, but rather on her supplying Ms. Mabasa with her symptoms and functional limitations for the report to Social Security.  AR 18.  This is an ordinary technique of evaluating credibility.  *See Bunnell*, 947 F.2d at 346.

Finally, the ALJ relied on Mancillas-Gutierrez's ability to care for her toddler daughter and engage in activities of daily living.  AR 18.  An ALJ could reasonably infer that the ability to care for a healthy two-year-old, including monitoring play activities, is inconsistent with testimony that the claimant was lying down most of the day.  AR 224, 251-252.  Mancillas-Gutierrez points out that she testified she needs help doing other activities such as marketing, errands and sometimes laundry.  AR 239, 242.  Even assuming that the ALJ erred in relying on activities of daily living, error in one credibility finding does not automatically result in remand.  In *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the Ninth Circuit concluded that two of the

ALJ's reasons for making an adverse credibility finding were invalid.  The court held that
when an ALJ provides specific reasons for discounting the claimant's credibility, the
question is whether the ALJ's decision remains legally valid, despite such error, based
on the ALJ's "remaining reasoning *and ultimate credibility determination.*"  *Id.* at 1162
(italics in original).  Therefore, when, as here, an ALJ articulates specific reasons for
discounting a claimant's credibility, reliance on an illegitimate reason(s) among others
does not automatically result in a remand.  *See Batson v. Comm'r of Soc. Sec. Admin.*,
359 F.3d 1190, 1197 (9th Cir. 2004) ("in light of all the other reasons given by the ALJ
for Batson's lack of credibility and his residual functional capacity, and in light of the
objective medical evidence on which the ALJ relied, there was substantial evidence
supporting the ALJ's decision").  Accordingly, to the extent the ALJ erred in relying on
activities of daily living, any error would not warrant remand in light of the other valid
reasons for discounting Mancillas-Gutierrez's credibility.

### E.    Duty to Develop Record on Obesity, Pain and Fatigue

As discussed above, the ALJ ordered a consultative orthopedic examination after
the hearing.  AR 252-253.  The ALJ expressly considered Mancillas-Gutierrez's body
mass index of 35 as indicating obesity.  AR 15.  The ALJ further considered the
possible effects of obesity on residual functional capacity, including aggravation or
exacerbation of limitations.  AR 17.  Mancillas-Gutierrez was represented by counsel.
She did not present any testimony or other evidence as to how obesity limits her
functional capacity or how it exacerbates her conditions.  Nor does she cite to such
evidence in this court.  She "has not set forth, and there is no evidence in the record, of
any functional limitations as a result of her obesity that the ALJ failed to consider."
*Burch*, 400 F.3d at 684.  To the extent Mancillas-Gutierrez argues that the ALJ should
have done more to develop the record, her argument is foreclosed by *Burch*.  *Id.* at 682-
84.

Mancillas-Gutierrez also argues that the ALJ should have considered her side
effects from medication.  Mancillas-Gutierrez did not testify that side effects interfered

1   with her ability to work.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001)

2   ("There were passing mentions of the side effects of Mr. Osenbrock's medication in

3   some of the medical records, but there was no evidence of side effects severe enough

4   to interfere with Osenbrock's ability to work."); *Miller v. Heckler*, 770 F.2d 845, 849 (9th

5   Cir. 1985) (claimant bears burden of producing evidence that use of narcotic medication

6   impaired his ability to work).  Although she identified side effects of fatigue, drowsiness

7   and sleepiness from current medications[8] (AR 237-239), interference with an ability to

8   work is not presumed from the existence of side effects.

9                 **F.    Hypothetical to Vocational Expert**

10          Mancillas-Gutierrez argues that the ALJ's hypothetical did not include limitations

11   in her testimony and the treating physicians' opinions.  JS at 16.  For the same reasons,

12   she objects to the ALJ's use of written interrogatories to the vocational expert.

13          Mancillas-Gutierrez concedes that the use of written interrogatories is generally

14   acceptable.  JS at 19.  She does not dispute the ALJ's statements that he gave counsel

15   the opportunity to object to the interrogatories and submit cross interrogatories.  AR 11.

16   She does not dispute that, although she objected to the use of any written interrogatory,

17   she did not submit cross interrogatories.  AR 12.

18          The ALJ may rely on testimony a vocational expert gives in response to a

19   hypothetical that contains "all of the limitations that the ALJ found credible and

20   supported by substantial evidence in the record."  *Bayliss*, 427 F.3d at 1217-18.  The

21   ALJ is not required to include limitations that are not in his findings.  *Rollins v.*

22   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock*, 240 F.3d at 1165.  Because

23   the ALJ properly discounted Mancillas-Gutierrez's credibility and the opinions of treating

24   physicians, the ALJ did not err.

25   ///

26   _____

27        [8]   Mancillas-Gutierrez also cites testimony about side effects from medications that she
     stopped taking.  AR 232-233.  Again, she makes no showing that the side effects
28   prevented her from working.

**IV.**

**CONCLUSION**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 23, 2009

_____
ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE